MITCHELL et al. v. COLE, Internal Revenue Collector.

(District Court, N. D. New York.   October 18, 1915.)

INTERNAL REVENUE ⚖═9—OCCUPATION TAX—OLEOMARGARINE—"WHOLESALE DEALER."

Act Aug. 2, 1886, c. 840, § 3, 24 Stat. 209, as amended by Act May 9, 1902, c. 784, § 2, 32 Stat. 194 (Comp. St. 1913, § 5977), declaring "every person who sells * * * oleomargarine in the original manufacturer's packages shall be deemed a wholesale dealer" therein, a firm, though otherwise engaged only in retail business is such a dealer, where it purchases the oleomargarine desired for the business of it and another firm, containing its members and one additional member, has it charged, billed, and delivered to it, at its place of business, and pays therefor with its check, and then sends and charges to the other firm, at the same price, the amount desired by it, and is paid therefor by check of the other firm: the oleomargarine during all such transactions being in the original packages.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⚖═9.

For other definitions, see Words and Phrases, First and Second Series, Wholesale Dealer.]

At Law.   Action by Frank A. Mitchell and another against Charles C. Cole, as Collector of Internal Revenue for the Twenty-First District of New York.   Complaint dismissed.

This is an action by the plaintiffs, Frank A. Mitchell and George F. Lewis, constituting the firm of Mitchell & Lewis to recover the amount paid to the collector of internal revenue as tax and penalty imposed on them as alleged wholesale dealers in oleomargarine, in all $201.01. This tax and penalty was paid under protest, and all preliminaries necessary for the commencement and prosecution of the action were complied with.

Hinman, Howard & Kattell, of Binghamton, N. Y., for plaintiffs.

Frank J. Cregg, Asst. U. S. Atty., of Syracuse, N. Y., for defendant.

RAY, District Judge.   The question in this case is: Was the firm of Mitchell & Lewis, which made the transfers and sales of oleomargarine to Hall, Mitchell & Lewis, hereafter mentioned, at the time of such sales "a wholesale dealer in oleomargarine"? If so, the tax and penalty was legally imposed and collected, and plaintiffs cannot recover. If not, it was illegally imposed and collected, and judgment must be for the plaintiffs, inasmuch as it was paid under protest and all necessary preliminary steps have been taken to enable the plaintiffs to recover.

There is no dispute as to the actual facts.   In November, 1911, the plaintiffs, Frank A. Mitchell and George F. Lewis, under the firm name of Mitchell & Lewis, were engaged in the business of selling at retail oleomargarine and other articles, and had a retailer's license. Their place of business was at 107 Washington street, city of Binghamton, N. Y., and they had been doing this business at that place under this name for a long time.   In November, 1911, said Mitchell and said

Lewis formed a copartnership with one Hall, and this last-mentioned firm from then on did business under the firm name of Hall, Mitchell & Lewis at 155 Hawley street, in said city, and thereafter each firm carried on the same kind of business at their respective locations. Hall, Mitchell & Lewis also had a retail dealer's oleomargarine license.

Neither of these firms manufactured oleomargarine, but from November, 1911, on each sold it at retail. Mitchell & Lewis purchased the oleomargarine desired for the business of both firms from a wholesaler, and had it charged and billed and delivered to Mitchell & Lewis at its said place of business, and paid therefor with its check. The amount of oleomargarine desired by Hall, Mitchell & Lewis for sale in its business was then sent to that firm by Mitchell & Lewis, and charged by the latter firm to Hall, Mitchell & Lewis at same price, which firm paid Mitchell & Lewis therefor by its check, without profit. All these sales and transfers of the oleomargarine were made in the original packages.

It is evident that Mitchell & Lewis and Hall, Mitchell & Lewis were two separate and distinct concerns. It is not the case of the same partners doing business under one firm name at one place and under another firm name at another place, and the one branch sending goods from the main place of business to the other place of business for sale there. Here Hall was the member of one firm, but not of the other, and the stocks of goods in the two stores were not owned by the same persons. It is clear that Mitchell & Lewis, having purchased the oleomargarine at wholesale, *sold* it, and sold it at wholesale in the unbroken original packages, to Hall, Mitchell & Lewis, which firm paid Mitchell & Lewis therefor. Here was every element of a sale—a seller, a purchaser, a fixed price, a delivery, and payment for the articles sold. It is immaterial that Mitchell & Lewis did not sell oleomargarine at wholesale to other dealers. I think that under the statute a person, firm, or corporation may be a wholesale dealer in oleomargarine, if he or it confines its sales to one individual, firm, or corporation. Under this statute, to constitute a wholesale dealer, it is not necessary that the seller have two or more customers. The statute says:

"Every person who sells or offers for sale oleomargarine in the original manufacturer's packages shall be deemed a wholesale dealer in oleomargarine." Act Aug. 2, 1886, c. 840, § 3, as amended by Act May 9, 1902, c. 784, § 2.

The learned counsel for the plaintiffs contends that the acts of the plaintiffs in furnishing oleomargarine to Hall, Mitchell & Lewis was a mere accommodation in business, and that it was purchased by Mitchell & Lewis *really* as agent for Hall, Mitchell & Lewis, and transferred to the real principal or purchaser, and that the spirit of the act was not offended against. The evidence does not sustain this contention. In this particular case, and so far as this one transaction is concerned, no particular harm would be done the government by holding that there was no intent to evade the tax or offend against the law. But the principle involved is of very great importance. In fact, Mitchell & Lewis purchased the oleomargarine, and paid for it with its own funds, and had it delivered at its place of business. This gave that firm perfect title. It did not purport to purchase as agent for the

other firm. It then turned over certain parts of it in the original packages, as originally intended, to Hall, Mitchell & Lewis, and charged them therefor as a sale, and later received pay for such packages and gave credit. It was when the oleomargarine was turned over and delivered to Hall, Mitchell & Lewis that that firm became the owner. Prior to that time, Mitchell & Lewis could have sold as its own every pound and package of the merchandise.

If the plaintiffs, when the matter was called to their attention, had offered to pay the tax, it would seem the collector might well have obtained authority to compromise on that basis; but the question is not in the case, and in any event this court is powerless to do other than dismiss the complaint, as it cannot remit the penalty, or any part of it, or allow a recovery therefor.

There will be findings in conformity to this opinion, and a judgment dismissing the complaint, with costs.